UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| OCTAVIUS DEONTE ALEXANDER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:21-cv-00336-JPH-MG ) |
| EDWARDS Sgt., et al., | ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO FEDERAL CLAIMS, RELINQUISHING SUPPLEMENTAL JURISDICTION AS TO STATE CLAIMS, AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Octavius Alexander, who at all times relevant to the allegations in the Complaint was an Indiana Department of Correction inmate, alleges that a correctional officer used excessive force by tasing him. He further alleges that other defendants failed to protect him from the use of excessive force, and that medical personnel were negligent. For the reasons that follow, the Court **grants** Defendants' motions for summary judgment, dkts. 64; 70, as to all federal claims and **relinquishes jurisdiction** over the state-law medical negligence claims.[1]

---

[1] Correctional Defendants filed a motion to strike Mr. Alexander's surreply, dkt. 82, for violating Southern District Local Rule 56-1(d). Dkt. [83]. They argue that Mr. Alexander merely rehashed arguments that were presented in his response but added record citations to those arguments. *Id.* Mr. Alexander's surreply is relatively brief and cites to Defendants' own exhibits. In light of his pro se status and the lack of prejudice to the Defendants in considering the surreply, the Court opts to take "a more flexible approach" and will consider his surreply. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Thus, the motion to strike, dkt. [83], is **denied**.

1

# I.
# Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion

can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

### A. The Parties and Background

At the time of the events relevant to this lawsuit,

- Mr. Alexander was an Indiana Department of Correction ("IDOC") inmate housed at Putnamville Correctional Facility. Dkt. 71-1 at 8, 11 (Mr. Alexander's Deposition); dkt. 71-3 (Use of Force Report). He was housed in the 17 North ("17N") dorm, which is general population, open-dorm style dormitory. Dkt. 71-1 at 11–12. The video evidence depicts 17N dorm. Dkt. 71-1 at 67; *see generally* dkt. 72-2, Ex. E (video depicting the dormitory).[2]

- Defendant Brooke Edwards was a correctional sergeant. Dkt. 71-1 at 37; dkt. 71-2 at ¶ 4 (Decl. of Sgt. Edwards).

- Defendant Michael Morris was a correctional sergeant and a member of the quick response team at Putnamville. Dkt. 71-1 at 37; dkt. 71-4 at ¶ 3 (Decl. of Officer Morris).

- Defendants Oscar Parish and Jack Renstrom were correctional officers. Dkt. 71-1 at 37.

---

[2] The Court observes that due to the angle of the video camera and distance from the bed that Mr. Alexander was occupying, the video lacks probative value with respect to the tasing incident itself. The video is helpful, however, with identifying the particular parties and timing of events.

3

- Defendant Ryan Thompson was a registered nurse who worked at Putnamville. Dkt. 66-2 at ¶¶ 1–2 (Aff. of Nurse Thompson).
- Anastasia Barnhart was a registered medical assistant ("RMA") who was employed in that role at Putnamville. Dkt. 66-3 at ¶¶ 1–2 (Aff. of RMA Barhnhart).

**B. The Incident**

On the morning of April 18, Mr. Alexander brushed his teeth and then walked to the other side of the unit to get some water. Dkt. 71-1 at 14. When he bent over to get the water, he "just started feeling shady. So [he] sat down in the chair by the phone, and [he] just blanked out from there." *Id.* Mr. Alexander does not know why he passed out, or why he became unresponsive. *Id.* at 14, 19. On that particular day, Putnamville staff had received several calls regarding medical emergencies for several inmates who appeared to have overdosed on drugs. Dkt. 71-2 at ¶ 5; dkt. 71-4 at ¶ 4.

From the moment Mr. Alexander became unresponsive until when he was eventually restrained, Mr. Alexander had no consciousness or awareness of what was happening around him. Dkt. 71-1 at 41–42, 85–86.

After blacking out, Mr. Alexander was assisted into the 17N dorm by two other inmates, one on each side of him. Ex. E at 7:56–8:01; dkt. 71-1 at 65 (Mr. Alexander identifying himself as the inmate with the long hair). The two inmates placed Mr. Alexander on a bottom bunk bed. Ex. E at 8:06–8:17; dkt. 71-1 at 68.

4

About a minute and a half later, Officer Jack Renstrom walked into the dorm, approached Mr. Alexander, and—seeing that he was unresponsive—called a signal 3000. *See* Ex. E at 9:53–10:05; dkt. 71-1 at 58, 69–70. A signal 3000 is the signal for a medical emergency. Dkt. 71-1 at 61.

Soon after, Sgt. Edwards went to the dorm in response to the medical emergency and walked towards Mr. Alexander's bed. Dkt. 71-2 at ¶ 6; dkt. 71-1 at 71; Ex. E at 11:35–11:43; dkt. 71-3. Sgt. Edwards saw Mr. Alexander lying on the bed unresponsive and called for medical staff. Dkt. 71-2 at ¶ 7; dkt. 71-3; dkt. 66-2 at ¶ 4.

Sgt. Tiffany Ethridge responded to the scene after Sgt. Edwards relayed that there was a medical emergency. Dkt. 71-5 at ¶ 5 (Decl. of Sgt. Ethridge). Sgt. Ethridge and Nurse Ryan Thompson entered the dorm. Dkt. 71-1 at 73; Ex. E at 12:39–12:45. At that point, Mr. Alexander remained unresponsive. Dkt. 71-1 at 19; dkt 66-2 at ¶ 4. Sgt. Ethridge observed Sgt. Edwards administering a sternum rub on Mr. Alexander. Dkt. 71-5 at ¶ 6. Officer Renstrom then left the dorm. Dkt. 71-1 at 73–74; Ex. E at 12:50–13:16.

Sgt. Ethridge and Sgt. Edwards attempted to rouse Mr. Alexander, but he remained unresponsive. Dkt. 71-5 at ¶ 7; Ex. E at 12:58–14:01; dkt. 71-1 at 76. Officer Renstrom returned briefly and then left the dorm again. Dkt. 71-1 at 77; Ex. E at 13:45–14:06.

Officer Parish then ran into the dorm area with RMA Barnhart following closely behind. Dkt. 71-1 at 77; Ex. E at 14:18. Officer Parish, Sgt. Edwards, and Nurse Thompson were at that point on the right side of the bed, while

5

Sgt. Ethridge was on the left side. Dkt. 71-1 at 78; Ex. E at 14:30. Mr. Alexander remained unresponsive. Dkt. 71-1 at 78–79.

Based on his observation that Mr. Alexander was not breathing normally and was not responding to physical or verbal stimuli, Nurse Thompson administered a dose of Narcan on Mr. Alexander. Dkt 66-2 at ¶¶ 5–6; dkt. 66-1 at 3 (Medical Records); Ex. E at 14:31-14:44. RMA Barnhart was not involved in the decision-making process with administering Narcan, as she lacks the legal authority to diagnose a patient or order specific medical care. Dkt. 66-3 at ¶ 6. Regardless, she agreed that the use of Narcan was appropriate based on Mr. Alexander's presentation. *Id.* at ¶ 7. Mr. Alexander does not remember the Narcan being administered, but he acknowledged that the use of it was appropriate given the situation. Dkt. 71-1 at 19–20, 41.

At this point, Sgt. Morris also responded to the scene. *Id.* at 79–80; Ex. E at 14:48–14:52. After the Narcan was administered, Mr. Alexander regained consciousness, became combative, and demonstrated aggressive behaviors. Dkt. 71-2 at ¶ 8; dkt. 71-4 at ¶ 7; dkt. 71-5 at ¶¶ 9–10; dkt. 66-2 at ¶ 5; dkt. 71-3. Mr. Alexander clenched his fist and started resisting staff by swinging his arm in a backwards motion attempting to hit Sgt. Ethridge. Dkt. 71-2 at ¶ 9; dkt. 71-4 at ¶ 8; dkt. 71-5 at ¶ 11; dkt. 71-3. Sgt. Edwards used her right hand and restrained Mr. Alexander's left arm by holding it in place against his body. Dkt. 71-2 at ¶ 10; dkt. 71-4 at ¶ 9; dkt. 71-5 at ¶ 12; dkt. 71-3. Sgt. Edwards handed Sgt. Ethridge her mechanical restraints for her to apply. Dkt. 71-2 at ¶ 11; dkt. 71-4 at ¶ 10; dkt. 71-5 at ¶ 13; dkt. 71-3. Sgt. Ethridge applied

6

restraints to Mr. Alexander's right arm. Dkt. 71-5 at ¶ 13. Mr. Alexander then extended that arm and locked it into place. *Id.* Sgt. Ethridge grabbed Mr. Alexander's left arm to get it restrained. *Id.* at ¶ 14. Mr. Alexander then moved his right arm underneath his body and turned his body. *Id.*

At this point, Sgt. Edwards, Sgt, Morris, and Sgt. Ethridge placed their hands on Mr. Alexander's right arm and ordered him to comply and submit to mechanical restraints. Dkt. 71-2 at ¶ 14; dkt. 71-4 at ¶ 12; dkt. 71-5 at ¶ 15; dkt. 71-3. Mr. Alexander refused to comply and continued to resist. Dkt. 71-2 at ¶ 15; dkt. 71-4 at ¶ 13; dkt. 71-5 at ¶ 16; dkt. 71-3. At this time, Mr. Alexander was still disoriented and unaware of staff trying to restrain him. Dkt. 71-1 at 82–83.

Sgt. Morris and Sgt. Edwards gave Mr. Alexander verbal warnings of "Taser, Taser, Taser," to alert him of the use of the taser if he did not comply. Dkt. 71-2 at ¶ 16; dkt. 71-4 at ¶ 14; dkt. 71-5 at ¶ 17; dkt. 71-3. Mr. Alexander did not comply, so Sgt. Edwards deployed a five-second duration of her taser to Mr. Alexander's upper right back area. Dkt. 71-2 at ¶¶ 16–17; dkt. 71-4 at ¶¶ 14–15; dkt. 71-5 at ¶ 17. Mr. Alexander has no recollection of being tased. Dkt. 71-1 at 22.

The use of the taser caused Mr. Alexander to loosen his locked arm, and Sgt. Ethridge and Sgt. Edwards were then able to handcuff Mr. Alexander with his hands behind his back. Dkt. 71-2 at ¶ 18; dkt. 71-4 at ¶ 16; dkt. 71-5 at ¶ 19; dkt. 71-3.

Mr. Alexander does not dispute that he was combative upon awakening, as he does not remember the time immediately before or after he was tased. Dkt. 71-1 at 16. However, he does not believe he should have been tased and that staff should have been trained to distinguish between "a medical emergency or a disciplinary emergency." *Id.* at 16, 26.

Once he was restrained, Mr. Alexander was escorted to the medical unit. Dkt. 71-2 at ¶ 18.

### C. Medical Care after the Incident

Mr. Alexander only realized that he had been tased once he was at the medical unit and the nurse removed the taser barbs from his back. Dkt. 71-1 at 22. Nurse Thompson observed no injuries related to the taser. Dkt. 66-1 at 3. Two EKGs were performed, which showed no signs of arrythmia. *Id.* at 3–5; dkt. 66-2 at ¶ 7. Nurse Thompson called Dr. Perez and informed him of the situation and EKG results. Dkt. 66-2 at ¶ 7. Dr. Perez found the EKG results to be normal and provided no further orders. *Id.* Mr. Alexander remained in the medical unit for observation for about an hour, and upon his release his vitals were within normal limits. *Id.*; dkt. 66-1 at 3.

Mr. Alexander experienced no pain with respect to the taser. Dkt. 71-1 at 24. Since the incident, he has experienced occasional pains in his chest area, and his doctor recommended he see a cardiologist. *Id.* at 10–11, 24. Mr. Alexander was never diagnosed with or treated for a heart condition in IDOC, and he never submitted any healthcare request forms related to a heart condition or any other medical issue related to the administration of Narcan. *Id.* at 25.

**D.    Claims**

Some claims were dismissed at screening, dkt. 12, and Eighth Amendment deliberate indifference medical claims against Nurse Thompson were dismissed for failure to exhaust available administrative remedies, dkt. 45.

After reviewing the video evidence, Mr. Alexander agreed that Officer Renstrom was not in the dorm area when he was tased, and that he should be dismissed from the case. Dkt. 71-1 at 83; dkt. 77 at 4 (Response to Correctional Defendants' motion for summary judgment). Accordingly, Officer Renstrom is entitled to summary judgment.

Mr. Alexander's remaining claims are against (1) Sgt. Edwards for using excessive force when she tased him; (2) Officers Morris and Parish, and Defendants Thompson and Barnhart ("Medical Defendants"), for failing to intervene and prevent the use of excessive force; and (3) Medical Defendants for negligence when they incorrectly assessed his medical condition before administering Narcan and thereafter failed to provide adequate care.

### III.
### Discussion

**A. Excessive Force**

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

9

cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

To evaluate this question, the Court weighs "several factors, such as 'the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022). "A *de minimus* application of force is insufficient to support an Eighth Amendment excessive force claim; instead, the force must be repugnant to the conscience of mankind." *Id.* Therefore, to survive summary judgment, Mr. Alexander "must present evidence supporting 'a reliable inference of wantonness in the infliction of pain.'" *Id.* (citing *Whitley*, 475 U.S. at 322).

Here, the need for force was high. The officers were responding to a medical emergency and encountered Mr. Alexander who was unresponsive to both verbal and physical stimuli. They spent several minutes trying to wake him up, to no avail. *See* Ex. E. Once Nurse Thompson administered Narcan, Mr. Alexander regained consciousness and became combative and aggressive. Dkt. 71-2 at ¶ 8; dkt. 71-4 at ¶ 7; dkt. 71-5 at ¶¶ 9–10; dkt. 66-2 at ¶ 5; dkt. 71-3. At this point, the threat of harm to an officer was also high as Mr. Alexander clenched his fist and swung his arm to try to hit Sgt. Ethridge. Dkt. 71-2 at ¶ 9; dkt. 71-4 at ¶ 8; dkt. 71-5 at ¶ 11. Mr. Alexander doesn't dispute that he was combative; he argues only that his resistance was involuntary because the Narcan made him "agitated and display agitated behaviors unintentionally." Dkt. 77 at 2.

Even so, this does not refute the evidence that Sgt. Edwards deployed her taser because Mr. Alexander was combative and refused to submit to restraints, and only after warning him that she was about to do so. *See Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009) ("In many circumstances—often when faced with aggression, disruption, or physical threat—compelling compliance with an order is a valid penological justification for use of a taser."); *Dye v. Loman*, 40 F. App'x 993, 996 (7th Cir. 2002) (affirming summary judgment for officers who used stun gun to obtain compliance because incarcerated plaintiff "was struggling with them and they needed to restrain him so that he would not injure them or himself."); *Husnik v. Engles*, 495 F. App'x 719, 721 (7th Cir. 2012) (affirming summary judgment because "the facts unmistakably show that the taser was reasonably used to bring [the plaintiff] under control in a manner that would avoid any further harm to the officers and not as a punishment").

The other factors also weigh in Sgt. Edwards's favor. With respect to the amount of force used, Sgt. Edwards deployed her taser once for five seconds. Dkt. 71-3; *Dye*, 40 F. App'x at 996 (concluding that two to three second application of a stun gun was not excessive when plaintiff was combative). To prevent the need for any force, Sgt. Morris and Sgt. Edwards gave Mr. Alexander verbal warnings of "Taser, Taser, Taser," to try to compel Mr. Alexander's compliance, but he did not stop resisting. Dkt. 71-2 at ¶ 16; dkt. 71-4 at ¶ 14; dkt. 71-5 at ¶ 17; dkt. 71-3; *see Forrest v. Prine*, 620 F.3d 739, 745 (7th Cir. 2010) (affirming grant of summary judgment where officer warned pretrial

11

detainee that noncompliance would result in him using a taser before he tased him).

The extent of the injury also favors Sgt. Edwards. While tasers may cause pain, *Lewis*, 581 F.3d at 475, Mr. Alexander testified that he experienced no pain from being tasered, dkt. 71-1 at 24. Although he testified that he experiences occasional chest pain and has been referred to a cardiologist by his doctor, he has presented no medical evidence that his symptoms are in any way connected to this incident. *See White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (noting that non-movant receives the "benefit of reasonable inferences from the evidence," "but not speculative inferences in his favor").

Because the undisputed evidence reflects that Sgt. Edwards used her taser to obtain Mr. Alexander's compliance and not to "maliciously and sadistically to cause harm," Sgt. Edwards is entitled to summary judgment. *Hudson*, 503 U.S. at 6–7.

### B. Failure to Intervene

Mr. Alexander brings failure-to-intervene claims against Officer Morris, Officer Parish, Nurse Thompson, and RMA Barnhart. A prison staff member that has a realistic opportunity to prevent another staff member from violating an inmate's rights through the use of excessive force, and chooses not to do so, may be held liable under § 1983. *See Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004). Whether the defendant had a realistic opportunity to intervene is normally a question for the jury unless no rational jury could conclude otherwise. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). However, while

excessive force claims and failure to intervene claims are legally distinct, they are "closely linked" because "by definition, if there was no excessive force then there can be no failure to intervene." *Id.* at 767−68.

Having concluded that Sgt. Edwards did not use excessive force when she tased Mr. Alexander, the other defendants are entitled to summary judgment on the failure to intervene claims.[3]

### C. State Law Negligence

The remaining claims are Mr. Alexander's state-law medical negligence claims against Nurse Thompson and RMA Barnhart. The Court must determine whether it is appropriate to exercise supplemental jurisdiction over these state-law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The Seventh Circuit has made clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have

---

[3] Because the Court has concluded that Mr. Alexander's rights were not violated, the Court need not discuss Correctional Defendants' argument that they are entitled to qualified immunity.

been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008).

Here, the relevant factors weigh in favor of the Court relinquishing supplemental jurisdiction over the state-law claims. *Groce*, 193 F.3d at 501. The statute of limitations will not have run on Mr. Alexander's state-law claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances absent here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998). The Court has not expended significant resources on the pending state-law claims. And the Court expects that the parties' efforts with respect to those claims in discovery and briefing will be repurposed in a state-court proceeding. Finally, comity favors allowing state courts to decide issues of state law.

For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over the remaining state-law claims. Accordingly, these claims are **dismissed without prejudice**.

## IV.
## Conclusion

For the foregoing reasons, Medical Defendants' motion for summary judgment, dkt. [64], is **granted** as to all federal claims. The Court relinquishes supplemental jurisdiction over Mr. Alexander's state-law medical negligence claims; these claims are **dismissed without prejudice**.

Correctional Defendants' motion for summary judgment, dkt. [70], is **granted**. Their motion to strike Mr. Alexander's surreply, dkt. [83], is **denied**.

**The clerk is directed** to update the names of Correctional Defendants as follows: Brooke Edwards, Michael Morris, Oscar Parish, and Jack Renstrom.

Final judgment consistent with this Order, the Court's February 10, 2022, Screening Order, dkt. 12, and the Court's January 11, 2023, Order on Defendants' Motions for Summary Judgment regarding the exhaustion defense, dkt. 45, will issue in a separate entry.

**SO ORDERED.**

Date: 9/10/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

15

Distribution:

OCTAVIUS DEONTE ALEXANDER
320 Brown Street
Apt 605
West Lafayette, IN 47906

All electronically registered counsel